**IN THE UNITES STATES DISTRICT COURT**
**FOR THE NOTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Erika Stevens , | ) | |
|     Plaintiff, | ) | |
| | ) | Case No. 17-cv-8710 |
|     v. | ) | |
| | ) | |
| Tara Shelton, in her official and | ) | Jury Demanded |
| individual capacity, Andrew Rhodes, | ) | |
| in his official and individual capacity, | ) | |
| Patricia Davlantes, in her official and | ) | |
| individual capacity, Board of | ) | |
| Education of the City of Chicago | ) | |
|     Defendant. | ) | |

## COMPLAINT

## INTRODUCTION

1.　　　Plaintiff, Erika Stevens, brings this lawsuit to redress numerous instances of discrimination, harassment and retaliation due to her disability and her participation in protected union activity.  Her claim under the ADA Sections (42 U.S.C. §12112 and §12203) is brought for violation of Ms. Stevens' right to be free from discrimination in employment on the basis of disability, for denial of a reasonable accommodation for her disability and for interference and retaliation with her ADA rights .  Ms. Stevens also sues named defendants in their official and personal capacities for violations of Ms. Stevens' constitutional rights including her rights under the Fourth, First, Fourteenth and Fifth Amendments of the United States Constitution.  Ms. Stevens also brings supplemental claims including defamation and battery against certain individual defendants.

1

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over Plaintiff's Title VII claims pursuant to 28 U.S.C. §1331, over her constitutional claims under 42 U.S.C. §1983 and over her state law claims under 28 U.S.C. §1367(a) because they arise out of the events and facts leading to her Federal claims.

3.      Venue is proper in this judicial district as the facts and events giving rise to Plaintiffs' claims occurred in this judicial district

## THE PARTIES

4.      **Plaintiff**, Erika Stevens, is an 8 year employee of Chicago Public Schools with an excellent work record.  Until her abrupt, and pretextual removal from her position near the end of the 2016-2017 academic year, Ms. Stevens taught advanced math (algebra, geometry, trigonometry and calculus), at South Loop Elementary

5.      Defendant, Tara Shelton is the principal of South Loop Elementary, one of Plaintiff's supervisors and is sued in her official and individual capacity, she is an employee of Defendant Board of Education of the City of Chicago.

6.      Defendant, Andrew Rhodes, is the assistant principal of South Loop  Elementary, one of Plaintiff's supervisors and is sued in his official and individual capacity. He is an employee of Defendant Board of Education of the City of Chicago.

7.      Defendant, Patricia Davlantes, is the resident principal of South Loop Elementary, one of Plaintiff's supervisors and is sued in her official and individual capacity. She is an employee of Defendant Board of Education of the City of Chicago.

2

8.      Defendant, Board of Education of the City of Chicago, is a body politic and corporate and is entrusted with the public education of all Chicago's children and is Ms. Stevens' employer.

## FACTS
## Employment History and Commendations:

9.      Plaintiff Erika Stevens has been employed for over 8 years by Defendant Chicago Public Schools as a teacher of advanced math at South Loop Elementary.

10.     Ms. Stevens teaches algebra, geometry, trigonometry and calculus to 6-8th graders – who would normally take these classes in high school.

11.     Plaintiff's students consistently achieve in the 90th percentile for students nationally.

12.     Ms. Stevens has been recognized as a National Blue Ribbon Teacher awarded by U.S. Department of Education.

13.     Plaintiff is of Black descent.

14.     About 3 1/2 years ago Ms. Stevens was diagnosed with a medical condition that limits her normal life activities including work .

15.     One of the features of Ms. Stevens' condition is that stress causes a physical reaction which can be incapacitating. To protect her health she must separate herself from stressful situations and this has caused Plaintiff to miss work occasionally.

16.     Despite missing work occasionally, Ms. Stevens performance and that of her students has been exemplary and outstanding.

17.     Defendant Tara Shelton, the principal of South Loop Elementary, has known about Ms. Stevens' condition since soon after Ms. Stevens was diagnosed three and a half years ago.

3

18. **Until then, the relationship between Ms. Stevens and Defendant Shelton was relatively cordial and professional.**

19. Plaintiff's absences over the course of any school year have mostly not exceeded her allotted sick days. To the extent they have, her condition requires this simple and straightforward accommodation.

20. If Plaintiff cannot relieve her stress it aggravates her condition and puts Plaintiff at risk of more serious and even grievous physical manifestations of her condition.

21. In the fall of 2014, school principal Tara Shelton came to Plaintiff demanding Plaintiff stop taking so many days off.

22. Ms. Stevens explained to her and the Resident Principal at the time of her newly diagnosed aliment. Plaintiff explained to them that her specialist was trying to find the right combination of therapies for her.

23. Ms. Stevens told Shelton hat Plaintiff didn't have control over her body and stress can heighten negative impacts to her body and physical and mental well-being. At the time, they appeared to understand.

24. Unfortunately, as time passed Ms. Shelton continued to give Plaintiff undue pressure about taking sick days and evaluating her negatively for taking sick days that she needed to take to preserve her health.

25. In addition to the harassing Ms. Stevens for the days she took off which were occasioned by her needing to take care of her condition, Shelton began harassing Plaintiff in her classroom.

26. Shelton began to frequently interrupt Ms. Stevens' class while she was teaching. At one point Shelton took over Plaintiff's lesson.

4

27.     Shelton then decided to give Plaintiff an assistant and then decided the assistant would take over Plaintiff's class.

28.     At that point Plaintiff told Shelton to give the assistant Plaintiff's class and take Plaintiff's name off the class list or allow Plaintiff to teach her class uninterrupted.

29.     From that point on Shelton has taken more frequent and more serious steps to harass, discriminate, and retaliate against Plaintiff for Plaintiff's condition.

30.     On or around September 2016, Defendant Shelton imposed a new work rule that required teachers to do work that was unnecessary – to explain how each work assignment related to grade level teaching goals. This would have created a substantial amount of extra busy work for all teachers.

31.     In Ms. Stevens' case the rule made even less sense as her students work at varying levels *above their grade level* and at different paces because of this instruction would not match up with goals as most if not all of her the students were beyond those.

32.     As a result of this arbitrary, unauthorized and burdensome work rule Ms. Stevens filed a class grievance with her union, the Chicago Teacher's Union to contest the new work rule.

33.     Almost immediately Defendant Shelton began to harass and retaliate against Ms. Stevens on a near daily basis.

34.     **Defendant Shelton began to interrupt Ms. Stevens class on a daily basis, for instance on May 16, 2017, Shelton entered the classroom during the 7th period class, started to talk to the students during Ms. Stevens' instruction, laughed at Ms. Stevens during Ms. Stevens' lecture and gave incorrect information to the students about perimeters.**

5

35.     Shelton began to "observe" Ms. Stevens' classes for the purpose of retaliating against her and creating new and increasing demands. Shelton asked for worksheets used by Ms. Stevens for her classes, and when these were provided, Shelton stated that she didn't receive them when she had.

36.      On May 18, 2o17, Shelton yelled at Ms. Stevens in front a class of students when she took them outside.  Other teachers took classes outside and were not yelled at or reprimanded.

37.     Shelton also moved students out of Ms. Stevens' room to be tested – while no other teacher's students were made to do so.

38.     On or about May 19, 2017, Defendant Davlantes, was present during testing and disruptive during the testing.

39.     During a meeting with union representative Greg Cox, Shelton, and Ms. Stevens, Ms. Stevens asked Shelton why she treated Ms. Stevens so poorly and whether ot was due to her medical condition.

40.     Shelton responded that Ms. Stevens "did miss a lot of days" or words to that effect.

41.     Mr. Cox noted that Shelton's singling out of Ms. Stevens was unique and that no other teacher faced this kind of treatment.

42.     Davlantes yelled at a student who was flustered, and accused Ms. Stevens of cheating, although no such thing did or could take place.

43.     Davlantes made Ms. Stevens' students sit on the floor and then abruptly cut short the testing time from 3:00pm although other teachers' time ended at 3:30.

44.     Student performance on exams is one of the major bases for evaluating CPS teachers, such disruptions by Defendant Davlantes formed part of a concerted effort on

the part of the administration to undermine Ms. Stevens, and retaliate against her for her absences due to her disability and/or her union activities.

45.     Ms. Stevens was told she would not be supervising any of the testing going forward – no other teacher was required to be absent when their classes were tested.

46.      Students approached Ms. Stevens and told them they overheard Shelton stating in the school office that she would fire Ms. Stevens if the students did not perform well on the tests.

47.     Davlantes and Shelton scheduled NWEA testing and an Algebra exit exam on the same day and told Ms. Stevens that she would have to pick between which she would administer although other teachers were not forced to make that choice as their exams were scheduled on different days.

48.     Shelton also began to write up Ms. Stevens for "overusing" a particular instruction method although her students were showing great progress.

49.     On or about June 2, 2017, Defendants removed the students from Ms. Stevens' class to test them. When Ms. Stevens inquired as to why she was being removed Shelton never replied.

50.     Defendant Davlantes asked Ms. Stevens to leave the testing room completely.

51.     When Ms. Stevens sought to leave her classroom, Defendant Rhodes physically blocker her path.

52.     Ms. Stevens asked Defendant Rhodes not to touch her and he grabbed her arm.

53.      Davlantes and Rhodes then suspended the testing

54.     Students asked Davlantes why testing was being suspended and Davlantes verbally attacked them.

55.    On May 5, 2017, when Ms. Stevens arrived to begin administering a testing

sessions Shelton came into the room, took them into another room and told Ms. Stevens

that she would not be testing her students that day.

56.    Shelton then began to question students about whether Ms. Stevens was cheating

and encouraging them to accuse her of doing so.

57.    One of the students wrote to Ms. Shelton:

> Hi Ms. Shelton everyone in 235 is very upset at the moment because of our
> tests being paused we were wondering why this is happening to us we all think
> it is because of your little issue with Ms. Stevens we know we know nothing
> about this issue but we were wondering what happened from your point of
> view it is very irresponsible to put the students(us) in the middle of this we
> just wanted to know whats going on.

58.    Shelton's antics were intended to and did in fact have a disruptive effect on testing

Ms. Stevens' students. This was done for the purpose of trying to cause low scores for her

students to use against her in her evaluation.

59.    One parent concerned about the situation wrote:

> After being delayed, suspended, and rescheduled three separate occasions
> within a two week period following the originally scheduled date the students
> finally started testing Monday June 5th.

60.    Shelton's antics took an extreme turn on June 7, 2017 when she falsely accused

Ms. Stevens of cheating and told her that she was being investigated and would no

longer be allowed in the school.

61.    Shelton demanded Ms. Stevens' keys to her personal file cabinet and when Ms.

Stevens would not give them to her nor let her remove her personal belongings, Shelton

blocked her exit and called the police.

62.    This went on for over an hour until finally, a CPS attorney, James Ciesel and CTU

attorney Graham Hill told Shelton she needed to allow Ms. Stevens to leave.

63.     Since, then Shelton tried to get other students to falsely accuse Ms. Stevens of misconduct.

64.     Shelton, forced at least one student to take tests again (on which she performed very well) accusing her of having cheated because the student showed sympathy to Ms. Stevens' plight.

65.     As a result of Shelton's false and malicious accusations, Ms. Stevens has had her professional reputation called into question.

66.     Strikingly, these accusations of cheating came after *years* of Ms. Stevens' students scoring exceptionally on their exams.

67.     As a result of Defendants' action, Ms. Stevens has been denied the opportunity to pursue various remunerative possibilities including not being allowed to teach summer school as she has done in the past, she has also not been able to seek a position for an after-school program at another school.

68.     Ms. Stevens filed an EEOC charge and received a Notice of Right to Sue on September 3, 2017. The notice is attached as Exhibit 1 to this Complaint.

## COUNT I – ADA -42 U.S.C. § 12112(a)
## Discrimination Due to Disability

69.     Plaintiff re-alleges and incorporates here, by reference, the allegations set forth in paragraphs 1-68 .

70.     Defendant brings this count against Defendant Board of Education of the City of Chicago.

71.     The Board through its agents, including Defendants Shelton, Rhodes and Davlantes, has discriminated against Ms. Stevens due to her disability.

72.     Defendant Shelton and others were well aware of Ms. Stevens' disability and Shelton acknowledged that Ms. Stevens' absences occasioned by her disability was one reason for her animus and ill treatment of Ms. Stevens.

73.     Wherefore, Plaintiff, respectfully requests that the Court enter a judgment against Defendants as follows:

     A. Ordering Defendant Board to reinstate Ms. Stevens to her position with full salary and benefits;

     B. Awarding any actual monetary losses sustained by the Plaintiff as a direct result of the violations including past and future wages;

     C. The interest on the amount described in the items listed above,

     D. Restoration and make-whole relief for the loss of any employment benefits or other compensation denied or lost by the Plaintiff;

     E. Finding that Defendant Board has discriminated against Ms. Stevens on the basis of her disability and an order prohibiting the Defendant from any further prohibited discrimination against her;

     F. Compensatory damages for subjecting Plaintiff to humiliating and unwarranted treatment ;

     G. Punitive damages against in an amount sufficient to  discourage Defendant from subjecting others to this conduct;

     H. An award of attorney's fees pursuant to 42. U.S.C. Section 1988;

     I. Costs incurred in filing and prosecuting this action; and

     J. Such additional relief as this Court deems appropriate and just

## COUNT II – ADA -42 U.S.C. § 12112(b)(5)
## Failure to Accommodate

74.     Plaintiff re-alleges and incorporates here, by reference, the allegations set forth in paragraphs 1-73 .

75.     Defendant brings this count against Defendant Board of Education of the City of Chicago.

76.     The Board through its agents, including Defendants Shelton, Rhodes and Davlantes, has discriminated against Ms. Stevens due to her disability. They knew of her disability and knowing that she requires time off to handle stress (particularly where that source of stress is heightened due to their harassment), yet taking her to task for using her sick time evinces an intent to discriminate.

77.     Defendant Shelton and others were well aware of Ms. Stevens' disability and Shelton acknowledged that Ms. Stevens' absences occasioned by her disability was one reason for her animus and ill treatment of Ms. Stevens.

78.     Wherefore, Plaintiff, respectfully requests that the Court enter a judgment against Defendants as follows:

   A. Ordering Defendant Board to reinstate Ms. Stevens to her position with full salary and benefits;

   B. Awarding any actual monetary losses sustained by the Plaintiff as a direct result of the violations including past and future wages;

   C. The interest on the amount described in the items listed above,

   D. Restoration and make-whole relief for the loss of any employment benefits or other compensation denied or lost by the Plaintiff;

   E. Declaring that Defendant Board has discriminated against Ms. Stevens on the basis of her disability and an order prohibiting the Defendant from any further prohibited discrimination against her;

   F. Compensatory damages for subjecting Plaintiff to humiliating and unwarranted treatment ;

   G. Punitive damages against in an amount sufficient to  discourage Defendant from subjecting others to this conduct;

   H. An award of attorney's fees pursuant to 42. U.S.C. Section 1988;

I.  Costs incurred in filing and prosecuting this action; and

J.  Such additional relief as this Court deems appropriate and just

## COUNT III – ADA -42 U.S.C. § 12203(a)and(b)
## Retaliation and Interference

79.     Plaintiff re-alleges and incorporates here, by reference, the allegations set forth in paragraphs 1-78 .

80.     Defendant brings this count against Defendant Board of Education of the City of Chicago.

81.     The Board through its agents, including Defendants Shelton, Rhodes and Davlantes, has discriminated against Ms. Stevens due to her disability. They knew of her disability and knowing that she requires time off to handle stress (particularly where that source of stress is heightened due to their harassment), yet taking her to task for using her sick time constitutes retaliation.

82.     These acts also constitute interference and coercion under the Act as these acts served to worsen Ms. Stevens' condition.

83.     Defendant Shelton and others were well aware of Ms. Stevens' disability and Shelton acknowledged that Ms. Stevens' absences occasioned by her disability was one reason for her animus and ill treatment of Ms. Stevens.

84.     Wherefore, Plaintiff, respectfully requests that the Court enter a judgment against Defendants as follows:

A.  Ordering Defendant Board to reinstate Ms. Stevens to her position with full salary and benefits;

B.  Awarding any actual monetary losses sustained by the Plaintiff as a direct result of the violations including past and future wages;

C.  The interest on the amount described in the items listed above,

D. Restoration and make-whole relief for the loss of any employment benefits or other compensation denied or lost by the Plaintiff;

E. Finding that Defendant Board has discriminated against Ms. Stevens on the basis of her disability and an order prohibiting the Defendant from any further prohibited discrimination against her;

F. Compensatory damages for subjecting Plaintiff to humiliating and unwarranted treatment ;

G. Punitive damages against in an amount sufficient to discourage Defendant from subjecting others to this conduct;

H. An award of attorney's fees pursuant to 42. U.S.C. Section 1988;

I. Costs incurred in filing and prosecuting this action; and

J. Such additional relief as this Court deems appropriate and just

## COUNT IV– 42 U.S.C. Section 1983
## FIRST AMENDMENT RETALIATION

85.     Plaintiff re-alleges and incorporates here, by reference, the allegations set forth in paragraphs 1-84.

86.     Plaintiff brings this count against all Defendants in their official and individual capacities and against Defendant Board.

87.     Ms. Stevens as a member of the Chicago Teachers Union has a right present grievances and pursue these. This grievance procedure constitutes one manner in which Ms. Stevens can petition for redress of grievances.

88.     Defendants, acting under color of law, by taking actions including subjecting Ms. Stevens to harassment and retaliation due to her participation in a class grievance against unreasonable work rules have violated Ms. Stevens' First Amendment right to petition the government for redress of grievances.

Wherefore, Plaintiff, respectfully requests that the Court enter a judgment against Defendants as follows:

    A. Declaring that Defendants have violated Plaiontiff's right to petition the government for redress of grievances;

    B. Ordering Defendant Board to reinstate Ms. Stevens to her position with full salary and benefits;

    C. Awarding any actual monetary losses sustained by the Plaintiff as a direct result of the violations including past and future wages;

    D. The interest on the amount described in the items listed above,

    E. Restoration and make-whole relief for the loss of any employment benefits or other compensation denied or lost by the Plaintiff;

    F. Compensatory damages for subjecting Plaintiff to humiliating and unwarranted treatment ;

    G. Punitive damages against in an amount sufficient to discourage Defendants from subjecting others to this conduct;

    H. An award of attorney's fees pursuant to 42. U.S.C. Section 1988;

    I. Costs incurred in filing and prosecuting this action; and

    J. Such additional relief as this Court deems appropriate and just

### COUNT V– 42 U.S.C. Section 1983
### FOURTEENTH AMENDEMENT EQUAL PROTECTION

89. Plaintiff re-alleges and incorporates here, by reference, the allegations set forth in paragraphs 1-88

90. Plaintiff brings this count against all Defendants in their official and individual capacities and against Defendant Board.

91. Defendants, acting under color of law, by taking actions including subjecting Ms. Stevens to harassment and attempting to besmirch her professional reputation and ultimately to cause her to lose her job, and lacking any rational or reasonable basis for

doing so to Ms. Stevens, a successful teacher, have violated Ms. Stevens' right to Equal

Protection under the law.

Wherefore, Plaintiff, respectfully requests that the Court enter a judgment against Defendants as follows:

A. Declaring that Defendants have violated Plaintiff's right to petition the government for redress of grievances;

B. Ordering Defendant Board to reinstate Ms. Stevens to her position with full salary and benefits;

C. Awarding any actual monetary losses sustained by the Plaintiff as a direct result of the violations including past and future wages;

D. The interest on the amount described in the items listed above,

E. Restoration and make-whole relief for the loss of any employment benefits or other compensation denied or lost by the Plaintiff;

F. Compensatory damages for subjecting Plaintiff to humiliating and unwarranted treatment ;

G. Punitive damages against in an amount sufficient to  discourage Defendants from subjecting others to this conduct;

H. An award of attorney's fees pursuant to 42. U.S.C. Section 1988;

I. Costs incurred in filing and prosecuting this action; and

J. Such additional relief as this Court deems appropriate and just

## COUNT VI– 42 U.S.C. Section 1983
## FIFTH AMENDMENT DUE PROCESS

92.     Plaintiff re-alleges and incorporates here, by reference, the allegations set forth in paragraphs 1-91.

93.     Plaintiff brings this count against all Defendants and against all individual Defendants in their official and individual capacities and against Defendant Board.

94.     Defendants, acting under color of law, by taking actions including subjecting Ms. Stevens to harassment and retaliation and by ultimately causing Ms. Stevens suspension, have violated and also conspired to violate Ms. Stevens' right to be free from the arbitrary taking of her property without due process of law.

        Wherefore, Plaintiff, respectfully requests that the Court enter a judgment against Defendants as follows:

A. A declaration that Defendants have violated her right to Due Process by taking her property without it;

B. Ordering Defendant Board to reinstate Ms. Stevens to her position with full salary and benefits;

C. Any actual monetary losses sustained by the Plaintiff as a direct result of the violations including past and future wages;

D. The interest on the amount described in the items listed above,

E. Restoration and make-whole relief for the loss of any employment benefits or other compensation denied or lost by the Plaintiff;

F. An Order prohibiting the Defendant from any further prohibited discrimination against her;

G. Compensatory damages against all Defendants for subjecting her to humiliating and unwarranted treatment ;

H. Punitive damages against individual Defendants in an amount sufficient to discourage individual Defendants from abusing their power and subjecting others to this conduct;

I. An award of attorney's fees pursuant to 42. U.S.C. Section 1988;

J. Costs incurred in filing and prosecuting this action; and

K. Such additional relief as this Court deems appropriate and just.

**COUNT VI– 42 U.S.C. Section 1983**
**FOURTH AMENDMENT UNREASONABLE SEIZURE**

95.     Plaintiff re-alleges and incorporates here, by reference, the allegations set forth in paragraphs 1-94.

96.     Plaintiff brings this count against Defendant Shelton in her official and individual capacity and against Defendant Board.

97.     Defendant Shelton, acting under color of law, by refusing to allow Ms. Stevens to leave the building when Shelton told her she was suspended has violated Ms. Stevens' right to be free from unreasonable seizures (aka false imprisonment).

Wherefore, Plaintiff, respectfully requests that the Court enter a judgment against Defendants as follows:

   A.  Declaring that Defendant Shelton has violated Plaintiff's right to free from unreasonable seizures;

   B.  Compensatory damages against Shelton for subjecting her to humiliating and unwarranted treatment ;

   C.  Punitive damages against Shelton Defendants in an amount sufficient to discourage her from abusing her power and subjecting others to this conduct;

   D.  An award of attorney's fees pursuant to 42. U.S.C. Section 1988;

   E.  Costs incurred in filing and prosecuting this action; and

   F.  Such additional relief as this Court deems appropriate and just.

## COUNT IX– DEFAMATION PER SE

98.     Plaintiff re-alleges and incorporates here, by reference, the allegations set forth in paragraphs 1-97.

99.     Plaintiff brings this count against Defendant Shelton in her official and individual capacity.

100. By falsely accusing Ms. Stevens of "cheating" on standardized tests administered to her students and using this as a purported and pretextual basis to remove her from her position while the Board investigates, Defendants have committed the tort of defamation in that they have impugned Ms. Stevens' professional reputation and created a cloud around her treatment at South Loop Elementary

Wherefore, Plaintiff, respectfully requests that the Court enter a judgment against Defendants as follows:

A. Presumed damages in an amount to be determined by a jury at trial

B. Any actual past and future monetary losses sustained by the Plaintiff as a direct result of the violations including past and future wages;

C. The interest on the amount described in the items listed above;

D. Restoration and make-whole relief for the loss of any employment benefits or other compensation denied or lost by the Plaintiff;

E. Punitive damages against individual Defendants in an amount sufficient to discourage individual Defendants from abusing their power and subjecting others to this conduct;

F. Costs incurred in filing and prosecuting this action; and

G. Such additional relief as this Court deems appropriate and just.

## COUNT X– BATTERY

101. Plaintiff re-alleges and incorporates here, by reference, the allegations set forth in paragraphs 1-100.

102. Plaintiff brings this count against Defendant Rhodes in his official and individual capacity.

103.    By physically obstructing her path and then grabbing Ms. Stevens' arm in an attempt to keep her from leaving the room, Rhodes has committed the tort of battery against Plaintiff.

Wherefore, Plaintiff, respectfully requests that the Court enter a judgment against Defendants as follows:

   A.  Damages in an amount to be determined by a jury at trial

   B.  The interest on the amount described in the items listed above;

   C.  Punitive damages against Rhodes in an amount sufficient to  discourage individual Defendants from abusing their power and subjecting others to this conduct;

   D.  Costs incurred in filing and prosecuting this action; and

   E.  Such additional relief as this Court deems appropriate and just.

## Jury Demand

Plaintiffs hereby demand a jury trial pursuant to Rule 38(b) of the Federal Rules of Civil Procedure on all issues so triable.

By:   _/s/  Jorge Sanchez_____
One of defendant's attorneys.


Jorge Sanchez
Lopez & Sanchez
77 W. Washington, Suite 1313,
Chicago, IL 60602
attysanchez@gmail.com
(312) 420-6784
ARDC# 6244796

Dated December 1, 2017

EEOC Form 161 (11/16)

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: Erika Stevens<br>c/o Jorge Sanchez, Esq.<br>Lopez & Sanchez, LLP<br>77 W. Washington, Suite 1313<br>Chicago, IL 60133 | From: Chicago District Office<br>500 West Madison St<br>Suite 2000<br>Chicago, IL 60661 |
|---|---|

| | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) | |
|---|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 440-2017-02971 | Daniel Acosta,<br>Investigator | (312) 869-8141 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

*Julianne Bowman*

**Julianne Bowman,**
**District Director**

9/11/17

*(Date Mailed)*

Enclosures(s)

cc: **Chicago Public Schools/South Loop Elementary**
c/o Ashley Seals, Assistant General Counsel
**LAW DEPARTMENT**
**City of Chicago Board of Education**
**1 North Dearborn, #900**
**Chicago, IL 60602**

Exhibit 1